IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL NUMBER H-17-019 |
| | § | |
| GUILLERMO CAPACHO | § | |

## **MEMORANDUM AND ORDER**

This criminal case is before the Court on Defendant Guillermo Capacho's Motion to Dismiss the Indictment for Violation of Money Laundering Merger Rules [Doc. # 82] and Motion to Dismiss the Indictment for Flawed Fraud Theory of Prosecution [Doc. # 83]. The United States filed a Consolidated Opposition [Doc. # 86], Defendant filed a Reply [Doc. # 90], and the United States filed a Sur-Reply [Doc. # 91]. The Court has carefully reviewed the Indictment, the Motions to Dismiss, and the related briefing. Based on that review, and the application of binding and persuasive legal authorities, the Court **denies** both Motions to Dismiss.

## I.   **BACKGROUND**

The Indictment [Doc. # 1] charges Capacho and his two Co-Defendants with one count of conspiracy to commit wire fraud, 25 substantive counts of wire fraud, one count of conspiracy to commit money laundering, 10 substantive counts of money laundering, and forfeiture allegations. Fundamentally, the Indictment alleges a

corporate kickback scheme in which Capacho, the Senior Vice President of an energy company referred to in the Indictment as Company A, helped Co-Defendant Cesar Rivera obtain contracts with Company A in exchange for kickbacks from Rivera. The Indictment alleges that Co-Defendant Miguel Garcia helped Capacho launder the kickback funds paid by Rivera to Capacho.

More specifically, the Indictment charges that beginning in August 2011, Capacho helped Rivera obtain contracts pursuant to which Rivera would purchase oil rigs from Company A's competitor in Mexico and then Rivera would resell the oil rigs to Company A at an increased price. The Indictment alleges that Rivera paid more than $4 million to Capacho as kickbacks. The substantive wire fraud counts focus on the wires related to transfers from Company A to Rivera and his companies. The substantive money laundering counts focus on transfers from Rivera to Capacho or others on Capacho's behalf, and then from Capacho, his wife, or Garcia to other entities for various purposes such as a down payment on a house and a deposit in a college savings program.

## II.  STANDARD FOR DISMISSAL OF INDICTMENT

An indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." FED. R. CRIM. P. 11(c)(1). "An indictment is sufficient if it, first, contains the elements of the offense charged and

fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974). The indictment must state the facts and circumstances of the alleged offense such that the accused will be informed of the alleged offense, but the indictment does not have to "articulate the evidence that will be used to prove the allegations." *See United States v. Pratt*, 728 F.3d 463, 478 (5th Cir. 2013). "The Constitution requires only enough specificity to allow the defendant to defend against the allegations." *Id*.

"In reviewing a challenge to an indictment alleging that it fails to state an offense, the court is required to take the allegations of the indictment as true and to determine whether an offense has been stated." *United States v. Thomas*, 724 F.3d 632, 640 (5th Cir. 2013) (citations omitted); *see also United States v. Kay*, 359 F.3d 738, 742 (5th Cir. 2004). A review of the sufficiency of an indictment "is governed by practical, not technical considerations." *United States v. Rainey*, 757 F.3d 234, 247 (5th Cir. 2014).

### III. <u>MOTION TO DISMISS - MERGER ISSUE</u>

Capacho seeks dismissal of the Indictment for violating the money laundering merger rules first discussed in *United States v. Santos*, 553 U.S. 507 (2008). The dispositive issue in the money laundering merger context is "whether the money

laundering crime is based upon the same or continuing conduct [as] the underlying predicate crime, or whether the crimes are separate and based upon separate conduct." *United States v. Gibson*, 875 F.3d 179, 191 (5th Cir. 2017) (quoting *United States v. Kennedy*, 707 F.3d 558, 565 (5th Cir. 2013)).

As an initial matter, the merger issue identified in *Santos* involved 18 U.S.C. § 1956(a)(1)(A), the section of the money laundering statute that prohibits transactions that "promote" the underlying unlawful activity. In this case, Capacho is charged under § 1956(a)(1)(B) of the money laundering statute, which prohibits transactions that are designed to "conceal" the nature, source, ownership or location of the proceeds of the underlying unlawful activity. The Eleventh Circuit has held that the *Santos* merger issue does not apply to the concealment money laundering provision, only to the promotional money laundering section. *See United States v. Esquenazi*, 752 F.3d 912, 935-36 (11th Cir. 2014).

Moreover, even if there could be a merger violation in connection with a § 1956(a)(1)(B) charge, the charges in the Indictment against Capacho do not implicate the merger problem because the money laundering counts are not premised on the same transactions as any of the wire fraud counts. *See United States v. Barton*, 526 F. App'x 360, 364 (5th Cir. Apr. 25, 2013). The underlying wire fraud counts address transactions whereby Rivera obtained funds from Company A and transferred

those funds to Capacho, his wife, or Garcia as kickbacks to Capacho. For example, Count 4 relates to a $23,448,377 wire transfer from Company A to a bank account of Dirivera Investments, LLC, a Rivera company. Each of Counts 5 through 8 involves a wire transfer from a bank account of a Rivera company to Capacho's wife bank account. Counts 16 and 20-26 involve wire transfers from a bank account of a Rivera company to a bank account of a Garcia-controlled company.

The money laundering charges against Capacho focus on different transfers – either (1) transfers from Garcia to Capacho or his wife of funds Garcia received from Rivera for Capacho's benefit, or (2) transfers by Capacho or his wife to various third parties of funds Capacho allegedly obtained through unlawful kickbacks from Rivera. For example, Count 30 relates to a transfer by Capacho of $798,758.15 as a down payment on a house, and Count 32 relates to a $373,563.10 wire transfer from Capacho's bank account to pay off a mortgage on a different house. Count 33 relates to a $140,000.00 transfer from Capacho's wife's bank account to "New York's 529 Advisor-Guided College Saving Program."

There is no merger problem because Capacho is not charged in the money laundering counts with paying individuals involved in the underlying wire fraud for services they provided that were necessary to the operation of the wire fraud, or otherwise engaging in the same transactions that form the basis for the wire fraud

charges. *See Stewart v. Keffer*, 514 F. App'x 504, 508 (5th Cir. Feb. 22, 2013). Instead, as discussed above, in the money laundering counts he is charged with engaging in transactions designed to conceal the nature and source of the kickback funds.

The allegations in the Indictment, if proven, would establish two separate, fully completed crimes – a wire fraud crime and a separate money laundering crime. As a result, there is no merger violation. *See, e.g., Kennedy*, 707 F.3d at 565-66. The Motion to Dismiss the Indictment for Violation of Money Laundering Merger Rules is denied.

## IV. MOTION TO DISMISS - THEORY OF PROSECUTION ISSUES

Capacho seeks dismissal of the Indictment based on his argument that the wire fraud counts lack the element of "materiality" and that the language in the Indictment does not adequately allege a "scheme and artifice to defraud" based on a failure to provide "honest services." As explained below, the Court finds that the Indictment adequately alleges "materiality" and a "scheme and artifice to defraud."

### A. Materiality

Capacho notes correctly that the Indictment does not use the term "material" when alleging false representations or omissions in connection with the wire fraud counts. It is uncontested that materiality of the alleged falsehood(s) or concealed facts

is an essential element of the wire fraud statute. *See Neder v. United States*, 527 U.S. 1, 43 (1999) (noting that "the well-settled meaning of 'fraud' required a misrepresentation or concealment of material fact); *United States v. Radley*, 632 F.3d 177, 185 (5th Cir. 2011). "The test for materiality is whether a misrepresentation has a natural tendency to influence, or is capable of influencing, the decision-making body to which it was addressed." *Id.* (internal quotations and citation omitted).

In the Fifth Circuit, the failure to use the word "material" in the Indictment is not fatal. *See United States v. Bieganowski*, 313 F.3d 264, 285 (5th Cir. 2002). It is sufficient that the facts alleged in the Indictment "warrant an inference that the false statement is material." *Id.* (quoting *United States v. McGough*, 510 F.2d 598, 602 (5th Cir. 1975)). The "proper inquiry is whether the allegation is potentially capable of being proved material by the government at trial and whether the allegation is sufficient to support an inference of materiality." *Bieganowski*, 313 F.3d at 286 (internal quotations and citation omitted).

In this case, the Indictment alleges that Capacho caused Company A to enter into contracts with Rivera and his companies by concealing from Company A the relationship between Capacho and Rivera. The Indictment alleges that Capacho helped convince executives at Company A to enter into the contracts with Rivera by promoting the contracts and Rivera's involvement, drafting internal reports and

presentations, and presenting the project to Company A's officers and directors. The Indictment alleges that Capacho helped persuade Company A executives to provide a substantial portion of the purchase price to Rivera in advance so that Rivera would not be required to use his own funds to purchase the oil rigs. These factual allegations in the Indictment warrant an inference of materiality. Specifically, the United States could prove at trial, consistent with these factual allegations, that if Company A had full and accurate information regarding the relationship and agreement between Capacho and Rivera, Company A would have elected not to purchase of the oil rigs through Rivera at the price actually paid to Rivera.[1] The evidence at trial thus could demonstrate that Company A deemed the misrepresentations and the concealed information to be material because the misrepresentations and concealed information described in the Indictment could have a tendency or capacity to influence or affect Company A's decision-making process. Indeed, the United States maintains that it intends to prove at trial that the misrepresentations and allegedly fraudulent omissions not only had the capacity to influence Company A's decision, but actually did so.

---

[1] Capacho argues that his expert witness will opine that there were not any "artificially inflated contracts" in the relevant transaction. *See* Reply [Doc. # 90], p. 9. The opinions of Defendant's expert, however, do not negate the allegations in the Indictment for purposes of a motion to dismiss the indictment. On a motion to dismiss an indictment, the allegations in the indictment are presumed true. *See United States v. Thomas*, 724 F.3d 632, 640 (5th Cir. 2013).

The Court concludes that the allegations in the Indictment establish that the alleged misrepresentations and fraudulently concealed information are potentially capable of being proved material by the government at trial and are sufficient to support an inference of materiality. As a result, the Motion to Dismiss the Indictment on this basis is denied.

### B. Scheme and Artifice to Defraud

To establish wire fraud in violation of 18 U.S.C. § 1343, the United States must allege and prove "(1) a scheme or artifice to defraud and (2) the use of wire communications in furtherance of the fraudulent scheme." *United States v. Stephens*, 571 F.3d 401, 404 (5th Cir. 2009). The purpose of the scheme or artifice to defraud can be to obtain money and property. *See United States v. Brown*, 459 F.3d 509, 519 (5th Cir. 2006). Indeed, in 1987, the Supreme Court held that the wire fraud statute protected only money and property. *See McNally v. United States*, 483 U.S. 350, 358-60 (1987). In response to the *McNally* decision, Congress enacted 18 U.S.C. § 1346, which provides that a "'scheme or artifice to defraud' includes a scheme or artifice to deprive another of the intangible right of honest services." 18 U.S.C. § 1346. Therefore, to charge honest-services wire fraud, the United States must allege (1) that the defendant used wire communications in interstate commerce to carry out a 'scheme or artifice to defraud' in violation of 18 U.S.C. § 1343, (2) by depriving

another of "the intangible right of honest services" as prohibited by 18 U.S.C. § 1346. *See United States v. Nagin*, 810 F.3d 348, 351 (5th Cir.), *cert. denied*, __ U.S. __, 137 S. Ct. 41 (2016). Capacho argues that the Indictment fails to allege adequately a scheme or artifice to defraud involving the intangible right of honest services.[2]

In support of his argument, Capacho relies primarily on *Skilling v. United States*, 561 U.S. 358 (2010). Capacho's reliance on *Skilling* in unpersuasive. In *Skilling*, the Supreme Court noted that pre-*McNally*, schemes involving bribes or kickbacks were considered "core . . . honest services fraud precedents." *Skilling*, 561 U.S. at 408. Therefore, the Supreme Court held that "§ 1346 criminalizes only the bribe-and-kickback core of the pre-*McNally* case law." *Id.* at 409. There can be no doubt that the honest services wire fraud charge against Capacho in the Indictment is based on his receipt of kickbacks in connection with the oil rig purchase contracts between Rivera and Company A.

Capacho argues that the Indictment must be dismissed because there is no allegation that he owed Company A a fiduciary duty. In support of this argument, Capacho relies on *United States v. Milovanovic*, 678 F.3d 713, 722 (9th Cir. 2012) (*en*

---

[2] Capacho does not address the allegations in the Indictment regarding a § 1343 wire fraud violation involving a scheme or artifice to defraud Company A of money and property. The Indictment clearly contains sufficient factual allegations regarding the alleged scheme between Capacho and Rivera to obtain from Company A millions of dollars more than required to purchase the oil rigs in Mexico. The § 1343 wire fraud charges are not subject to dismissal.

*banc*), which held that a breach of a fiduciary duty is an element of honest services fraud under § 1346. The Ninth Circuit in *Milovanovic*, however, reversed the district court's dismissal of the indictment, holding that the "breach of fiduciary duty" element is flexible and finding that "the superseding indictment sufficiently alleges a breach of a position of trust." *Id.* at 724. In this case, the Indictment alleges that Capacho served as the Senior Vice President of International Operations for Company A, and that he caused Company A to enter into contracts with Rivera without revealing his relationship with Rivera, particularly that he would be receiving millions of dollars in kickbacks. As did the Ninth Circuit in *Milovanovic*, this Court finds that these allegations in the Indictment adequately allege the existence and breach of a position of trust. Therefore, to the extent the breach of a fiduciary duty is an element of a § 1346 wire fraud claim, the allegations in the Indictment are sufficient and dismissal is unwarranted.

Moreover, Capacho cites no Fifth Circuit legal authority, and this Court's own research has revealed none, that follows the Ninth Circuit to require an allegation and proof of the breach of a fiduciary duty for purposes of a § 1346 wire fraud claim. On this basis also, the Motion to Dismiss the Indictment is denied.

Capacho argues as a separate basis for dismissal that the Indictment fails to trace the funds from Company A to Rivera or one or his companies, then to Capacho

or someone on his behalf. Capacho describes a pre-existing business relationship with Rivera and asserts that all the payments from Rivera were not kickbacks, but were related to this pre-existing business. These assertions are contrary to the allegations in the Indictment, and the allegations in the Indictment must be presumed true for purposes of the Motion to Dismiss the Indictment. As a result, the Motion to Dismiss is denied.

## V. CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the Indictment satisfies the requirement that it provide a "plain, concise, and definite" written statement of the essential facts constituting the offenses charged therein. The Indictment charges wire fraud counts that are separate from the money laundering counts, and there is no merger violation that would require dismissal of the Indictment. Additionally, the Indictment alleges sufficient facts to infer materiality of the alleged misrepresentations and concealed information. The Indictment adequately charges a scheme and artifice to defraud based on both a deprivation of "money and property" and a failure to provide "honest services." As a result, it is hereby

**ORDERED** that Defendant Capacho's Motion to Dismiss the Indictment for Violation of Money Laundering Merger Rules [Doc. # 82] and Motion to Dismiss the

Indictment for Flawed Fraud Theory of Prosecution [Doc. # 83] are **DENIED**. It is further

**ORDERED** that the case remains scheduled for a status conference at **9:45 a.m. on March 26, 2018**.

SIGNED at Houston, Texas this **15th** day of **March, 2018**.

_____
NANCY F. ATLAS
SENIOR UNITED STATES DISTRICT JUDGE