## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| UNITED STATES OF AMERICA | § | |
| --- | --- | --- |
| | § | |
| v. | § | CRIMINAL NO. 17-19 |
| | § | |
| MIGUEL GARCIA, | § | |
| Defendant. | § | |

### PLEA AGREEMENT

The United States of America, by and through Ryan K. Patrick, United States Attorney for the Southern District of Texas, and Ralph Imperato and John Pearson, Assistant United States Attorneys, and the defendant, Miguel Garcia ("Defendant"), and Defendant's counsel, pursuant to Rule 11(c)(1)(A) of the Federal Rules of Criminal Procedure, state that they have entered into an agreement, the terms and conditions of which are as follows:

### Defendant's Agreement

1. Defendant agrees to plead guilty to Count One of the Superseding Information. Count One charges Defendant with aiding and abetting a false statement on a federal income tax return, in violation of Title 26, United States Code, Section 7206(2). Defendant, by entering this plea, agrees that he is waiving any right to have the facts that the law makes essential to the punishment either charged in the information, or proved to a jury or proven beyond a reasonable doubt.

### Punishment Range

2. The **statutory** maximum penalty for each violation of Title 26, United States Code, Section 7602(2), is imprisonment of not more than three years and a fine of not more than $100,000. Additionally, Defendant may receive a term of supervised release after imprisonment of up to one year. *See* Title 18, United States Code, sections 3559(a)(5) and 3583(b)(3). Defendant acknowledges and understands that if he should violate the conditions of any period of

supervised release which may be imposed as part of his sentence, then Defendant may be imprisoned for the entire term of supervised release, without credit for time already served on the term of supervised release prior to such violation. *See* Title 18, United Stated Code, sections 3559(a)(5) and 3583(e)(3). Defendant understands that he cannot have the imposition or execution of the sentence suspended, nor is he eligible for parole.

## Mandatory Special Assessment

3. Pursuant to Title 18, United States Code, section 3013(a)(2)(A), immediately after sentencing, Defendant will pay to the Clerk of the United States District Court a special assessment in the amount of one hundred dollars ($100.00) per count of conviction. The payment will be by cashier's check or money order, payable to the Clerk of the United States District Court, c/o District Clerk's Office, P.O. Box 61010, Houston, Texas 77208, Attention: Finance.

## Immigration Consequences

4. Defendant recognizes that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States. Defendant understands that if he is not a citizen of the United States, by pleading guilty he may be removed from the United States, denied citizenship, and denied admission to the United States in the future. Defendant's attorney has advised Defendant of the potential immigration consequences resulting from Defendant's plea of guilty.

## Waiver of Appeal and Collateral Review

5. Defendant is aware that Title 28, United States Code, section 1291, and Title 18, United States Code, section 3742, afford a defendant the right to appeal the conviction and sentence imposed. Defendant is also aware that Title 28, United States Code, section 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the judgment of conviction and sentence has become final. Defendant knowingly and voluntarily waives the right to appeal or "collaterally attack" the conviction and sentence, except that Defendant does not waive the right to raise a claim of ineffective assistance of counsel on direct appeal, if otherwise permitted, or on collateral review in a motion under Title 28, United States Code, section 2255. In the event Defendant files a notice of appeal following the imposition of the sentence or later collaterally attacks his conviction or sentence, the United States will assert its rights under this agreement and seek specific performance of these waivers.

6. In agreeing to these waivers, Defendant is aware that a sentence has not yet been determined by the Court. Defendant is also aware that any estimate of the possible sentencing range under the sentencing guidelines that he may have received from his counsel, the United States or the Probation Office, is a prediction and not a promise, did not induce his guilty plea, and is not binding on the United States, the Probation Office or the Court. The United States does not make any promise or representation concerning what sentence the defendant will receive. Defendant further understands and agrees that the United States Sentencing Guidelines are "effectively advisory" to the Court. *See United States v. Booker*, 543 U.S. 220 (2005). Accordingly, Defendant understands that, although the Court must consult the Sentencing

Guidelines and must take them into account when sentencing Defendant, the Court is not bound to follow the Sentencing Guidelines nor sentence Defendant within the calculated guideline range.

7. Defendant understands and agrees that each and all waivers contained in the Agreement are made in exchange for the concessions made by the United States in this plea agreement.

## The United States' Agreements

7.5 ~~10~~. The United States agrees to each of the following:

(a) If Defendant pleads guilty to Count One of the Superseding Information and persists in that plea through sentencing, and if the Court accepts this plea agreement, the United States will move to dismiss any remaining counts of the indictment at the time of sentencing;

(b) If Defendant pleads guilty to Count One of the Superseding Information and persists in that plea through sentencing, the United States agrees not to oppose the defendant's request for a three level downward adjustment under U.S.S.G § 3B1.2 based on the defendant's mitigating role in the offense; and

(b) If the Court determines that Defendant qualifies for an adjustment under section 3E1.1(a) of the United States Sentencing Guidelines, and the offense level prior to operation of section 3E1.1(a) is 16 or greater, the United States will move under section 3E1.1(b) for an additional one-level reduction because Defendant timely notified authorities of his or her intent to plead guilty, thereby permitting the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources more efficiently.

## Agreement Binding - Southern District of Texas Only

8. The United States Attorney's Office for the Southern District of Texas agrees that it will not further criminally prosecute Defendant in the Southern District of Texas for offenses arising from conduct charged in the indictment. This plea agreement binds only the United States Attorney's Office for the Southern District of Texas and Defendant. It does not bind any other United States Attorney's Office. The United States Attorney's Office for the Southern District of

4

Texas will bring this plea agreement and the full extent of Defendant's cooperation to the attention of other prosecuting offices, if requested.

### United States' Non-Waiver of Appeal

9. The United States reserves the right to carry out its responsibilities under guidelines sentencing. Specifically, the United States reserves the right:

(a) to bring its version of the facts of this case, including its evidence file and any investigative files, to the attention of the Probation Office in connection with that office's preparation of a presentence report;

(b) to set forth or dispute sentencing factors or facts material to sentencing;

(c) to seek resolution of such factors or facts in conference with Defendant's counsel and the Probation Office;

(d) to file a pleading relating to these issues, in accordance with section 6A1.2 of the United States Sentencing Guidelines and Title 18, United States Code, section 3553(a); and

(e) to appeal the sentence imposed or the manner in which it was determined.

### Sentence Determination

10. Defendant is aware that the sentence will be imposed after consideration of the United States Sentencing Guidelines and Policy Statements, which are only advisory, as well as the provisions of Title 18, United States Code, section 3553(a). Defendant nonetheless acknowledges and agrees that the Court has authority to impose any sentence up to and including the statutory maximum set for the offense(s) to which Defendant pleads guilty, and that the sentence to be imposed is within the sole discretion of the sentencing judge after the Court has consulted the applicable Sentencing Guidelines. Defendant understands and agrees that the parties' positions regarding the application of the Sentencing Guidelines do not bind the Court and that the sentence imposed is within the discretion of the sentencing judge. If the Court should impose any sentence

up to the maximum established by statute, or should the Court order any or all of the sentences imposed to run consecutively, Defendant cannot, for that reason alone, withdraw a guilty plea, and will remain bound to fulfill all of the obligations under this plea agreement.

## Rights at Trial

11. Defendant understands that by entering into this agreement, he surrenders certain rights as provided in this plea agreement. Defendant understands that the rights of a defendant include the following:

> (a) If Defendant persisted in a plea of not guilty to the charges, defendant would have the right to a speedy jury trial with the assistance of counsel. The trial may be conducted by a judge sitting without a jury if Defendant, the United States, and the court all agree.
>
> (b) At a trial, the United States would be required to present witnesses and other evidence against Defendant. Defendant would have the opportunity to confront those witnesses and his attorney would be allowed to cross-examine them. In turn, Defendant could, but would not be required to, present witnesses and other evidence on his own behalf. If the witnesses for Defendant would not appear voluntarily, he could require their attendance through the subpoena power of the court; and
>
> (c) At a trial, Defendant could rely on a privilege against self-incrimination and decline to testify, and no inference of guilt could be drawn from such refusal to testify. However, if Defendant desired to do so, he could testify on his own behalf.

## Factual Basis for Guilty Plea

12. Defendant is pleading guilty because he is in fact guilty of the charges contained in Count One of the Superseding Information. If this case were to proceed to trial, the United States could prove each element of the offense beyond a reasonable doubt. The following facts, among others would be offered to establish Defendant's guilt:

Defendant MIGUEL GARCIA was a United States citizen and resident of Windermere,

Florida. GARCIA was a business associate of co-defendant GUILLERMO CAPACHO, a resident of The Woodlands, Texas, who worked as the Senior Vice President of International Operations at Company A. Company A, which provided rig services to the energy industry, was headquartered in Houston, Texas, and it did business in both the United States and Mexico.

During the relevant time period, GARCIA maintained control of multiple bank accounts, located in the United States and abroad, in the names of multiple corporations, including Servicios Colombianos Petroleros, Inc. (SCP), Servicios Colombianos Petroleros SAS Corporation (SCP SAS), and MGM & Company, Inc. (MGM).

Co-defendant CESAR RIVERA was a United States citizen and a resident of San Antonio, Texas. RIVERA owned and operated a number of business that provided various services to the energy industry, and RIVERA's businesses operated in both the United States and Mexico. These businesses included: Gulf Coast Drilling S.A. de C.V. (Gulf Coast Drilling); DiRivera Investment, LLC (DiRivera); RGV Holding S.A. de C.V. (RGV); Cala del Noreste S.A. de C.V. (Cegala); Cofiaga S.A. de C.V. (Cofiaga); and Fino Oilfield Services, Inc. (Fino).

With CAPACHO's assistance, RIVERA and his companies entered into contracts with Company A. Beginning in August 2011, CAPACHO helped RIVERA seek and win a lucrative contract to serve as the middleman in a large rig purchase deal. This contract, which CAPACHO and other Company A employees referred to as "the Jose Project," called for RIVERA to buy 14 rigs from a competitor of Company A, then resell those rigs to Company A. Company A eventually paid over $63,000,000 to RIVERA for the rigs. From in or about December 2011 through in or about February 2013, RIVERA kicked back monies to CAPACHO through a complex series of wire transfers. These transfers involved sending money from accounts

7

controlled by RIVERA, his mother, his employees, and their corporate entities to accounts controlled by GARCIA, Co-Conspirator A, and CAPACHO himself.

Pursuant to these contracts, CAPACHO and RIVERA caused Company A to pay RIVERA and companies he owned or controlled tens of millions of dollars. From at least December 2011 through March 2013, RIVERA paid kickbacks to CAPACHO out of the contract fees he received from Company A. CAPACHO and RIVERA concealed from Company A their relationship, including the kickbacks paid to CAPACHO by RIVERA, in a number of different ways. These included routing the kickbacks through shell corporations and bank accounts controlled by GARCIA, CAPACHO, CAPACHO's spouse, and employees of RIVERA; routing the kickbacks through foreign bank accounts, including accounts in Canada, Mexico, Panama, and Colombia; using private email accounts and alias names and nicknames, including "WILLIAM GOMEZ" and "Engineer" for CAPACHO, to discuss the details of the kickback scheme; and concocting multiple false cover stories for the wire transfers, in order to evade scrutiny from financial institutions, Company A, and the Internal Revenue Service.

For example, on October 1 and November 20, 2012, RIVERA caused two wires of $50,000 each to be sent from a bank account he controlled to two different SCP accounts. On or about December 17, 2011, CAPACHO, using the alias "William Gomez" and the email account wacg_62@hotmail.com, emailed RIVERA and asked him to send information making the transfers look like a loan from RIVERA's companies to SCP. Three days later, on December 20, 2011, CAPACHO emailed RIVERA that he had spoken with GARCIA and suggested an alternative false cover story for the wire transfers: "you [RIVERA] are helping me send some money I had invested in Venezuela in some land," and that CAPACHO was now moving the

money to Colombia to invest.

Ultimately, the conspirators used a third cover story to conceal the reason for the wire transfers. GARCIA composed and emailed two false SCP invoices to RIVERA, making it seem as if SCP had provided services to RIVERA's companies. On or about December 21, 2011, RIVERA signed the invoices and emailed them back to GARCIA, knowing that SCP had in fact provided no services to RIVERA's companies and was simply being used to funnel money to CAPACHO.

In addition, defendant CAPACHO filed false individual income tax returns with the Internal Revenue Service for the years 2011, 2012, and 2013. These returns willfully failed to report the kickbacks received from RIVERA as income, thus reducing CAPACHO's overall tax liability. By opening bank accounts, preparing false invoices, and emailing them to the co-defendants as outlined above, defendant GARCIA aided and abetted co-defendant CAPACHO in his preparation and presentation of the false income tax returns. The three false returns omitted income in excess of $3,598,173, resulting in a tax loss of $1,324,546.

### Breach of Plea Agreement

13. If Defendant should fail in any way to fulfill completely all of the obligations under this plea agreement, the United States will be released from its obligations under the plea agreement, and Defendant's plea and sentence will stand. If at any time Defendant retains, conceals, or disposes of assets in violation of this plea agreement, or if Defendant knowingly withholds evidence or is otherwise not completely truthful with the United States, then the United States may move the Court to set aside the guilty plea and reinstate prosecution. Any information

and documents that have been disclosed by Defendant, whether prior to or subsequent to this plea agreement, and all leads derived therefrom, will be used against defendant in any prosecution.

### Restitution, Forfeiture, and Fines – Generally

14. This Plea Agreement is being entered into by the United States on the basis of Defendant's express representation that he will make a full and complete disclosure of all assets over which he exercises direct or indirect control, or in which he has any financial interest. Defendant agrees not to dispose of any assets or take any action that would effect a transfer of property in which he has an interest, unless Defendant obtains the prior written permission of the United States.

15. Defendant agrees to make complete financial disclosure by truthfully executing a sworn financial statement (Form OBD-500 or similar form) within 14 days of signing this plea agreement. Defendant agrees to authorize the release of all financial information requested by the United States, including, but not limited to, executing authorization forms permitting the United States to obtain tax information, bank account records, credit histories, and social security information. Defendant agrees to discuss and answer any questions by the United States relating to Defendant's complete financial disclosure.

16. Defendant agrees to take all steps necessary to pass clear title to forfeitable assets to the United States and to assist fully in the collection of restitution and fines, including, but not limited to, surrendering title, executing a warranty deed, signing a consent decree, stipulating to facts regarding the transfer of title and the basis for the forfeiture, and signing any other documents necessary to effectuate such transfer. Defendant also agrees to direct any banks which have custody of his assets to deliver all funds and records of such assets to the United States.

17. Defendant understands that forfeiture, restitution, and fines are separate components of sentencing and are separate obligations.

## Restitution

18. Defendant agrees to pay full restitution to the victim regardless of the count of conviction. Defendant understands and agrees that the Court will determine the amount of restitution to fully compensate the victim. Defendant agrees that restitution imposed by the Court will be due and payable immediately and that Defendant will not attempt to avoid or delay payment. Subject to the provisions of paragraph 7 above, Defendant waives the right to challenge in any manner, including by direct appeal or in a collateral proceeding, the restitution order imposed by the Court.

19. Defendant agrees to make his restitution payments to the Clerk of Court, including on each payment the defendant's name, social security number, the district court's docket number assigned to this case, the tax periods to which the restitution has been ordered, and a statement that the payment is being submitted pursuant to the Court's restitution order. The defendant shall also include with the restitution payment a request that the Clerk of Court send the information and restitution payment to the IRS at the following address:

> IRS-RACS
> Attn.: Mail Stop 6261, Restitution
> 333 W. Pershing Avenue
> Kansas City, MO 64108

The defendant also agrees to send a notice of any restitution payment made to the Clerk of Court to the IRS at the above address. Defendant agrees to sign any IRS forms deemed necessary by the IRS to enable the IRS to make an assessment of any amount ordered in restitution, including but not limited to IRS form 8821 entitled "Tax Information Authorization."

### Fines

20. Defendant understands that under the Sentencing Guidelines the Court is permitted to order Defendant to pay a fine that is sufficient to reimburse the government for the costs of any imprisonment or term of supervised release, if any. Defendant agrees that any fine imposed by the Court will be due and payable immediately, and Defendant will not attempt to avoid or delay payment. Subject to the provisions of paragraph 7 above, Defendant waives the right to challenge the fine in any manner, including by direct appeal or in a collateral proceeding.

### Criminal Tax Loss and Civil Tax Liability

21. Defendant understands that the restitution ordered or paid in this case will be applied to the U.S. Individual Income Taxes owed on the false income tax returns that defendant aided and abetted and will not be applied to defendant's U.S. Individual Income Tax Years. Defendant understands that the amounts of relevant conduct and restitution found by the court in this criminal case do not limit the IRS in determining any additional civil taxes that defendant owes on his own U.S. Individual Income Tax Years. Defendant understands that the IRS is free to civilly audit any of defendant's U.S. Individual Income Tax Years and may seek additional taxes, penalties, and interest for those income tax years.

22. Defendant agrees not to file any claim for refund of any amount ordered or paid in restitution in this case. Defendant further agrees not to file any action in a U.S. District Court, U.S. Tax Court, or the U.S. Court of Federal Claims seeking a refund, offset, or other recovery of any amounts ordered or paid in restitution in this case.

23. Defendant agrees to cooperate fully with the Internal Revenue Service in determining the correct civil tax liabilities of the income tax returns in this case and in this

investigation, along with all income tax returns of defendant himself. Defendant agrees to make all books, records, and documents in his possession, custody, or control available to the IRS for use in computing all civil tax liabilities of any taxpayers, including himself.

24. Nothing in this plea agreement shall limit the IRS in its lawful examination, determination, assessment, or collection of any taxes, penalties, or interest due from any taxpayer. Defendant agrees that this plea agreement and any judgment, order, release, or satisfaction issued in connection with this plea agreement will not satisfy, settle, offset, or compromise defendant's obligation to pay the balance of any civil liabilities, including additional taxes, penalties, or interest, on any of defendant's own U.S. Individual Income Tax Years.

### Press Release

25. Defendant consents, under 26 U.S.C. § 6103(c), to the United States' disclosure of the contents of the entire public record of this case to the news media in making a press release regarding defendant's conviction and sentence.

### Complete Agreement

26. This written plea agreement, consisting of 15 pages, including the attached addendum of Defendant and his attorney, constitutes the complete plea agreement between the United States, Defendant, and Defendant's counsel. No promises or representations have been made by the United States except as set forth in writing in this plea agreement. Defendant acknowledges that no threats have been made against him/her and that he is pleading guilty freely and voluntarily because he is guilty.

29. Any modification of this plea agreement must be in writing and signed by all parties.

Filed at _Houston_, Texas, on _September 5, 2018_

_____
Defendant

Subscribed and sworn to before me on _September 5_, 20_18_

DAVID J. BRADLEY, Clerk
UNITED STATES DISTRICT CLERK

By: _____
Deputy United States District Clerk

APPROVED:

Ryan K. Patrick
United States Attorney

By: _____
Ralph Imperato
John Pearson
Assistant United States Attorneys
Southern District of Texas

_____
Neal Davis
Attorney for Defendant Miguel Garcia

Wendell Olson

14

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| UNITED STATES OF AMERICA | § | |
| --- | --- | --- |
| | § | |
| v. | § | CRIMINAL NO. |
| | § | |
| MIGUEL GARCIA, | § | |
| Defendant. | § | |

**PLEA AGREEMENT -- ADDENDUM**

I have fully explained to Defendant his rights with respect to the pending indictment. I have reviewed the provisions of the United States Sentencing Commission's Guidelines Manual and Policy Statements and I have fully and carefully explained to Defendant the provisions of those Guidelines which may apply in this case. I have also explained to Defendant that the Sentencing Guidelines are only advisory and the court may sentence Defendant up to the maximum allowed by statute per count of conviction. Further, I have carefully reviewed every part of this plea agreement with Defendant. To my knowledge, Defendant's decision to enter into this agreement is an informed and voluntary one.

_____   7-5-18
Attorney for Defendant       Date

I have consulted with my attorney and fully understand all my rights with respect to the indictment pending against me. My attorney has fully explained, and I understand, all my rights with respect to the provisions of the United States Sentencing Commission's Guidelines Manual which may apply in my case. I have read and carefully reviewed every part of this plea agreement with my attorney. I understand this agreement and I voluntarily agree to its terms.

_____   7-5-18
Defendant                    Date

15